UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATHAN GILLIS,

    Plaintiff,

    v.                                                          Case No. 12-C-723

WILLIAM POLLARD, GARY HAMBLIN,
D. WESTFIELD, LT. BRAEMER,
CAPT. GRAFF, CO BEBO,
CO MOUNGEY, CO LUNDE,
T. MELI, SGT. WALLER,
CAPT. O'DONOVAN, CO GILL,
SGT. DAHLKE, MEYER,
and MS. ZANK,

    Defendants.

ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (DOC. 30), GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DOC. 70), AND DISMISSING THIS ACTION

This matter is before the court on plaintiff's motion for partial summary judgment and defendants' motion for summary judgment. For the reasons set forth below, plaintiff's motion will be denied and defendants' motion will be granted.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTS[1]

Plaintiff is proceeding on Eighth Amendment claims against defendants Bebo, Moungey, and Lunde based on allegations that they hit and rubbed his penis and testicles during pat searches. He is also proceeding on claims that defendants Braemer, Graff, Meli, O'Donovan, Pollard, Dahlke, Meyer, Hamblin, Waller, Zank, Westfield, Lunde, and Moungey retaliated against him after he complained about the pat searches.

---

[1]This section is taken from Defendants' Proposed Findings of Fact in support of their motion for summary judgment and from Plaintiff's Proposed Findings of Fact in support of his motion for partial summary judgment. Proposed facts that do not comply with Federal Rule of Civil Procedure 56(c) are not included in this section.

A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTS[1]

Plaintiff is proceeding on Eighth Amendment claims against defendants Bebo, Moungey, and Lunde based on allegations that they hit and rubbed his penis and testicles during pat searches. He is also proceeding on claims that defendants Braemer, Graff, Meli, O'Donovan, Pollard, Dahlke, Meyer, Hamblin, Waller, Zank, Westfield, Lunde, and Moungey retaliated against him after he complained about the pat searches.

---

[1]This section is taken from Defendants' Proposed Findings of Fact in support of their motion for summary judgment and from Plaintiff's Proposed Findings of Fact in support of his motion for partial summary judgment. Proposed facts that do not comply with Federal Rule of Civil Procedure 56(c) are not included in this section.

A.   Pat Search Allegations

Defendants Bebo and Moungey are employed by the Wisconsin Department of Corrections (DOC) as correctional officers at Waupun Correctional Institution (WCI). (Bebo Aff. ¶ 2; Moungey Aff. ¶ 2). In their capacities as correctional officers, Bebo and Moungey are responsible for the security, custody, control and treatment of inmates, supervising inmates in work or housing unit situations, escorting inmates off-grounds as required, patrolling institution building and grounds, and performing related work as necessary. Both are second shift officers and work in the segregation area. (Bebo Aff. ¶ 3; Moungey Aff. ¶ 3).

  1.   Pat Search Procedure

A properly conducted pat search starts around the collar, then around the neckline, shoulders, tops of the arms, down the arms, under the armpits, along the sides of the torso from the armpits to the waist, down the chest, and down the back from the shoulders to the waist, checking the elastic in the waistline. (Graff 2d Aff. ¶ 10.) Next the lower abdominal area between the waistband and the groin is checked, followed by a search of the insides, front and back of the legs including the groin area and the area between the cheeks of the buttocks, using the side of the hand. The pat search continues down the legs. During the pat search, both hands are in the bladed position, meaning all fingers straightened and together, with one palm facing the inner thigh and the other hand on the outer portion of the leg. The staff member proceeds downward toward the ankle.

Because the pat search is designed to check the groin area as a potential hiding place, the back of the correctional staff member's bladed hand will inevitably come in contact with the inmate's genital area through the inmate's clothing. (Graff 2d Aff. ¶ 11.)

3

2. Officer Bebo Incident

Plaintiff alleges that defendant Bebo inappropriately touched his penis and testicles during pat searches which took place between April and June, 2012. Plaintiff claims that defendant Bebo sexually rubbed and painfully hit his genitals during pat searches conducted between April and June, 2012. Bebo has conducted numerous pat searches on plaintiff in his capacity as a segregation unit officer and he avers that he has never sexually rubbed or inappropriately hit plaintiff in the penis, testicles, or any other part of his genital area. (Bebo Aff. ¶ 5).

Plaintiff references one incident involving Bebo: a pat search on May 11, 2012, during which Bebo rubbed plaintiff's penis by placing his right hand on his penis in a cupping fashion and rubbing with an upward motion. (Bebo Aff. ¶ 6). An investigation of plaintiff's allegations about this pat search concluded that the charges were untrue. (Bebo Aff. ¶ 7). The investigation found that the incident occurred when plaintiff was being escorted to recreation while confined to the segregation unit, that Bebo conducted a proper bladed hand pat search and that Bebo's technique was consistent with pat search procedures and policies. (Bebo Aff. ¶¶ 8-9). In addition, the investigation determined Bebo searched plaintiff for safety and security reasons, including the need to find contraband that may pose a threat to the safety of staff and inmates. (Bebo Aff. ¶ 10). Contraband may be hidden about the body of an inmate, often between the inmate's skin and clothing.

According to Bebo, when searching plaintiff and other inmates he followed standard policy and used a standard bladed hand search to search plaintiff. (Bebo Aff. ¶ 11). A bladed hand pat search can result in incidental contact between the outside of the officer's hand and an inmate's crotch. However, Bebo further avers that he did not deliberately

4

touch plaintiff or rub his genital area during the pat search at issue, or during any other pat search. (Bebo Aff. ¶ 12).

       3.      Officer Moungey Incidents

Plaintiff alleges that defendant Moungey inappropriately rubbed and hit his penis and testicles while subjecting him to pat searches between April and June 2012. (Moungey Aff. ¶ 4). Specifically, plaintiff asserts that Moungey touched him during pat searches on May 23, 2012, May 30, 2012, and June 8, 2012. (Moungey Aff. ¶ 5). Moungey avers that at no time has he sexually rubbed or inappropriately hit plaintiff in his penis or testicles, and that he has always tried to conduct pat searches in compliance with his training as a correctional officer. (Moungey Aff. ¶ 6). Frequent and proper searches are necessary in segregation to keep the officers and the inmates safe. (Moungey Aff. ¶ 10). The standard bladed hand search does not involve sudden movements or hitting, such as "karate chopping," but rather a slower movement along the inmate's body through his clothing, so that contraband may be detected. Consistent with the purpose of this search, the groin area is searched, as needed, and that may result in incidental contact with the genital region. (*Id.*)

Plaintiff's allegations against Moungey related to May 30, 2012, and June 8, 2012, were investigated and Moungey was cleared of having engaged in any inappropriate touching of him during pat searches. It is Moungey's understanding that DOC staff did not investigate plaintiff's May 23, 2012, allegations. (Moungey Aff. ¶ 12).

Additionally, Moungey witnessed the pat search conducted by Bebo on May 11, 2012. He did not see Bebo rub plaintiff's penis or touch plaintiff inappropriately. Rather, Moungey avers that Bebo performed a standard and proper bladed hand search, consistent with the institution's policies and procedures. (Moungey Aff. ¶ 14).

B. Retaliatory Conduct Report Claims

Plaintiff claims that he was issued three retaliatory conduct reports after he complained that defendants Bebo and Moungey touched him sexually during the pat searches described above. Multiple complaints were filed by plaintiff regarding WCI officers touching him inappropriately or sexually during pat searches. (Meli Aff. ¶¶12-16). DOC policies provide procedures for investigating when an inmate complains that staff has engaged in sexual misconduct. (Meli Aff. ¶10). Defendant Meli, Security Director at WCI, assigned staff to investigate three of plaintiff's complaints. (Meli Aff. ¶¶5, 13). These investigations did not reveal that plaintiff's allegations about being touched inappropriately during pat searches were true. (Meli Aff. ¶¶15-17). After these investigations, each investigator wrote a conduct report charging that plaintiff lied about staff, contrary to Wis. Admin. Code § DOC 303.271. (O'Donovan Aff. ¶¶7-10, Exs. A-C; Meli Aff. ¶¶14-16, Exs. A-C).

1. Conduct Report 2303319

Defendant Lieutenant Braemer was assigned to investigate plaintiff's charge against defendant Bebo arising from the May 11, 2012, pat search. (Braemer Aff. ¶¶ 2-3, 8). Braemer's investigation included an interview of the staff that was present during the pat search, namely, Officers Bebo and Moungey. (Braemer Aff. ¶9). Afterward, defendant Braemer issued Conduct Report 2303319 for lying about staff. (Braemer Aff. ¶6, Ex. A). In doing so, he relied on the officers' statements that Bebo did not rub plaintiff's penis inappropriately, and that any contact with plaintiff's genital region would have been incidental to a proper pat search. (Braemer Aff. ¶¶10-11). Braemer also relied on his interview of plaintiff during which plaintiff gave an account of the pat search that could not

6

be reconciled with the two staff members' accounts. (Braemer Aff. ¶¶12-14). Braemer determined that plaintiff's account was not credible in light of the two accounts by staff and the absence of any reason for Bebo to conduct an inappropriate pat search, including a motive to retaliate against plaintiff for exercising his rights. (Braemer Aff. ¶¶14-17).

Defendant Meli reviewed Conduct Report 2303319 and allowed it to proceed to a disciplinary hearing. (Meli Aff. ¶¶5-6, Ex. A). Meli's decision was based on the contents of the conduct report, including a summary of plaintiff's charges. (Meli Aff. ¶¶6-7). His decision was not based on retaliation against plaintiff for exercising any rights. (*Id.*)

Conduct Report 2303319 proceeded to a disciplinary hearing, during which defendant O'Donovan presided as a hearing officer. (O'Donovan Aff. ¶2. 11-12). Evidence at the hearing included the conduct report, testimony from staff, submissions from plaintiff, and two videos. (O'Donovan Aff. ¶13, Ex. D). Based on the evidence presented, O'Donovan found that it was more likely than not that plaintiff was guilty of lying about staff. (O'Donovan Aff. ¶14, Ex. D). In part, O'Donovan relied on a video of plaintiff demonstrating the rubbing that occurred during the pat search in question and a second video of the actual pat search in question that did not show the officer rubbing plaintiff's penis, as plaintiff had alleged and demonstrated. (O'Donovan Aff. ¶¶13-14, Ex. D). Plaintiff appealed the disciplinary decision and defendant Pollard affirmed the decision of guilty based on the hearing record and the underlying evidence. (Pollard Aff. ¶¶2, 7-8, 18, Exs. A and B).

2. Conduct Report 2313007

Defendant Graff, a Captain at WCI at all times relevant, completed Conduct Report 2313007. (Graff 2d Aff. ¶¶2, 5, Ex. A). Plaintiff had alleged that defendant Moungey hit him in the genital area during a pat search on May 30, 2012. (Graff 2d Aff. ¶6). As part of his

7

investigation of this claim, Graff interviewed defendant Moungey, plaintiff, and viewed a video of the pat search in question. (Graff 2d Aff. ¶¶7, 14-15). When viewing the video, Graff saw no reaction from plaintiff during the pat search and no sudden movement that might support plaintiff's claim that Moungey had "karate chopped" plaintiff in the groin. (Graff 2d Aff. ¶15). Based on the interviews and video, Graff determined that there was no evidence that Moungey improperly conducted the pat search. (Graff 2d Aff. ¶17). Consequently, he issued the conduct report stating that plaintiff had lied about staff. (Graff 2d Aff. ¶¶15-18). Graff's report rested on the investigation that showed that plaintiff's account was fabricated, as it could not be reconciled with Moungey's account and the video. (Graff 2d Aff. ¶¶15-20).

Graff's conduct report, CR 2313007, proceeded to a disciplinary hearing with defendant O'Donovan presiding as the hearing officer. (O'Donovan Aff. ¶¶15-17, Ex. E). O'Donovan determined from the evidence that it was more likely than not that plaintiff was guilty of lying about staff. (*Id.*) Evidence at the hearing included the conduct report, plaintiff's statement, and a video of the pat search. (O'Donovan Aff. ¶16, Ex. E). O'Donovan found that the video did not show a reaction from plaintiff that was consistent with being hit by a karate chop in the genitals. Further, O'Donovan found that the conduct report indicated that plaintiff went out to recreation immediately after the alleged karate chop and that doing so did not support plaintiff's claim that he was injured. (*Id*). O'Donovan avers that his findings were not based on a motive to retaliate against plaintiff for exercising any rights. (O'Donovan Aff. ¶¶17, 22). Plaintiff appealed this guilty finding and defendant Pollard affirmed the disciplinary decision based on the hearing record and the underlying evidence. (Pollard Aff. ¶¶9-10, 18, Exs. C and D).

8

### 3. Conduct Report 2320837

A third conduct report, CR 2320837, was completed by Captain Schueler a member of the Fox Lake Correctional Institution staff at all times relevant. (O'Donovan Aff. ¶10, Ex. C). Schueler is also trained in the handling of Prison Rape Elimination Act (PREA) investigations and from time to time is asked to assist correctional institutions in the investigation of inmate complaints that fall within the scope of the PREA. (Schueler Aff. ¶ 5).

On July 11, 2012, Schueler was asked to assist WCI by investigating plaintiff's complaint that Moungey hit his penis during a pat search conducted on June 8, 2012. Plaintiff had claimed that Moungey's actions caused him pain. (Schueler Aff. ¶ 7, Ex. A, and ¶ 8). During the course of the investigation, Schueler relied on video footage of the incident in question, the complaint submitted by plaintiff and his personal interviews of plaintiff and Moungey. Schueler concluded that plaintiff's version of events was inconsistent with the video evidence. (Schueler Aff. ¶ 9). There was no indication on the video that Moungey struck plaintiff's penis or in the vicinity of plaintiff's genitals. Moreover, Schueler did not observe any movements on the video indicating that Moungey raised his hand toward plaintiff's groin. Instead, the actions by Moungey that Schueler observed were consistent with a proper pat search of an inmate's inner leg area. (Schueler Aff. ¶ 10). Hence, Schueler concluded that plaintiff was making a false statement when he accused Moungey of inappropriate touching. Therefore, Schueler recommended that the complaint be dismissed and that plaintiff receive a conduct report for lying about staff.

Defendant O'Donovan presided as a hearing officer for the disciplinary hearing that followed CR 2320837. (O'Donovan Aff. ¶18, Ex. F). The resulting finding by O'Donovan

9

that plaintiff lied about staff relied on the video of the pat search and the absence of any indication in the video that Moungey's hand was in the groin area of plaintiff or any reaction by plaintiff consistent with a painful hit to the penis. (O'Donovan Aff. ¶20, Ex. F). O'Donovan avers that his finding of guilt was based on that evidence and not on a motive to retaliate against plaintiff for exercising any rights. (O'Donovan Aff. ¶¶21-22, Ex. F).

Plaintiff appealed the decision and defendant Pollard affirmed the decision based on the documentation of the hearing and the underlying evidence. (Pollard Aff. ¶¶11-12, 18, Exs. E and F).

C.     Other Retaliation Claims

On or about June 19, 2012, plaintiff wrote to defendant Westfield, the Security Chief. Plaintiff claimed that he was not permitted to make phone calls to the PREA committee hotline and that he was forced to sleep on a worn mattress in retaliation for filing complaints against staff. (Pollard 2d Aff. ¶ 9). Warden Pollard responded to plaintiff immediately addressing the concerns he raised in the letter to defendant Westfield. (Pollard 2d Aff. ¶ 10, Ex. G).

With respect to phone calls Security Director Meli reported that plaintiff asked to use the telephone on two occasions to call the PREA committee and was allowed to make both of those phone calls. Therefore, plaintiff's complaint was deemed unfounded. (Pollard 2d Aff. ¶ 11). With respect to the mattress claim, Warden Pollard informed plaintiff that his concerns were forwarded to Captain Graff for review as Segregation Supervisor because his usual job duties included the investigation of complaints regarding living conditions in his unit. (Pollard 2d Aff. ¶ 12). Accordingly, soon after June 19, 2012, Pollard informed Graff that plaintiff had complained that he was being forced to sleep on a worn

10

out/dilapidated mattress, allegedly in retaliation for having filed sexual misconduct complaints against officers. (Graff 3d Aff. ¶ 6).

During the time at issue the segregation building was to receive a new style of mattress. However, there were not enough to provide new mattresses to all inmates and about half of the inmates would get the new style. (Graff 3d Aff. ¶ 8). Graff discussed with the segregation staff a method for distributing the new mattresses to the inmates. It was concluded that those inmates with the oldest mattresses would have theirs replaced first.

The older style mattresses were a "tan" color. (Graff 3d Aff. ¶ 8). At the time of the mattress replacement, plaintiff's mattress was a functional, more recent blue mattress. Regardless, plaintiff was one of the 50% of the segregation inmates to get a new style mattress, although he was not among the very first to obtain one. (Graff 3d Aff. ¶ 8). Hence, Graff did not deny plaintiff privileges or force him to sleep on a worn out mattress because he filed complaints. (Graff 3d Aff. ¶ 9).

D.  Exhaustion of Administrative Remedies

Welcome Rose is employed by the DOC as a Corrections Complaint Examiner (CCE). In this capacity, Rose receives and investigates appeals made to the DOC Secretary regarding adverse decisions on complaints filed by inmates, and makes appropriate recommendations concerning the same. In Rose's capacity as CCE, she has diligently searched and examined the regularly conducted business records of her office, specifically with respect to inmate complaints and appeals filed by plaintiff, who is a prodigious and voluminous complaint writer. (Rose Aff. ¶¶ 10-11, Ex. A).

Plaintiff did not file any offender complaints with respect to his claim that defendant Lunde sexually assaulted him during a pat search. (Rose Aff. ¶ 14). Also, he did not file

11

any offender complaints with respect to his claim that he was denied release from the segregation unit at WCI. (Rose Aff. ¶ 15).

On April 3, 2012, plaintiff filed Offender Complaint WCI-2012-6991 asserting that he was denied a religious calendar and his shampoo. This complaint was dismissed by the institution complaint examiner (ICE) on April 6, 2012, and the reviewing authority on April 9, 2012. Plaintiff did not appeal the ICE's recommendation to the CCE. Further, at no time did plaintiff allege that the items were not allowed because of the defendants retaliating in any way. (Rose Aff. ¶ 16, Ex. B).

On April 24, 2012, plaintiff filed Offender Complaint WCI-2012-8569 charging that he was denied certain hygiene products. This complaint was rejected by the ICE because it was filed beyond the fourteen calendar day limit. Plaintiff did not appeal to the reviewing authority. Further, at no time did plaintiff claim in the complaint that the items were not allowed because the defendants were retaliating against him. (Rose Aff. ¶ 17, Ex. C).

On April 25, 2012, plaintiff filed Offender Complaint WCI-2012-8668 alleging that he was not allowed to cash his United States savings bond. Although plaintiff procedurally exhausted this complaint, at no time did he contend in the complaint that he was not allowed to cash the bond because of the defendants retaliating against him. (Rose Aff. ¶ 18, Ex. D).

On April 30, 2012, plaintiff filed Offender Complaint WCI-2012-8981 maintaining that he was denied his religious newspaper while in segregation. Plaintiff procedurally exhausted this complaint, but at no time did he allege in the complaint that he was denied newspapers because the defendants were retaliating against him. (Rose Aff. ¶ 19, Ex. E).

12

On May 3, 2012, plaintiff filed Offender Complaint WCI-2012-9275 contending that he was denied certain hygiene products. This complaint was rejected by the ICE because it was filed beyond the fourteen calendar day limit. Plaintiff appealed the ICE's recommendation to the reviewing authority. However, at no time did he allege in the complaint that he was denied items because the defendants were retaliating in any way. (Rose Aff. ¶ 20, Ex. F).

On June 26, 2012, plaintiff filed Offender Complaint WCI-2012-13117 alleging that he was denied his meal tray on June 24, 2012, and was also denied toilet paper. Again, he procedurally exhausted the complaint, yet failed to allege that he was denied these things because the defendants were retaliating against him. (Rose Aff. ¶ 21, Ex. G).

On July 2, 2012, plaintiff filed Offender Complaint WCI-2012-14170 alleging that he was denied toilet paper. This complaint was also procedurally exhausted without any claim that the defendants were retaliating against him. (Rose Aff. ¶ 22, Ex. H).

Lastly, on July 23, 2012, plaintiff filed Offender Complaint WCI-2012-15253 indicating that he was not allowed canteen when he wanted to obtain a catalog to purchase religious items while he was in segregation at WCI. This procedurally exhausted complaint failed to include a charge that the defendants were retaliating against him. (Rose Aff. ¶ 23, Ex. I).

ANALYSIS

Plaintiff, in support of his motion for partial summary judgment against defendants Pollard, Braemer, Graff, Meli and O'Donovan contends that he was issued three retaliatory conduct reports solely because he complained of his treatment by guards using the prison grievance system. On the other hand, defendants contend that they are entitled to summary judgment because, (1) plaintiff has failed to exhaust administrative remedies as

13

to several claims; (2) plaintiff's allegations about improper touching are meritless; and (3) there is no evidence supporting the remaining retaliation claims.

A.  Exhaustion of Administrative Remedies

Defendants contend that plaintiff failed to exhaust his administrative remedies as to five of his retaliation claims and his pat search claim against defendant Lunde. Plaintiff did not respond to this argument.

The Prison Litigation Reform Act (PLRA) provides in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). Before a Wisconsin inmate may commence a civil action, the inmate shall exhaust all administrative remedies

14

that the DOC has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

To use the ICRS, an inmate must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

As noted, plaintiff did not respond to defendants' argument that he failed to exhaust available administrative remedies regarding his retaliation claims and his pat search claim against defendant Lunde. Consequently, the court finds that he has abandoned these claims, and that summary judgment in defendants' favor is proper. *See Blue v. Hartford Life & Acc. Ins Co.*, 698 F.3d 587, 597 (7th Cir. 2012); *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district

15

court in response to summary judgment motions are waived); *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 624 n. 3 (7th Cir. 2001) (same); *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003).

In any event, it is undisputed that while plaintiff filed inmate complaints asserting actions that he claims were retaliatory, his related inmate complaints did not state these actions were retaliatory. As such, the following five retaliation claims are subject to dismissal for failure to provide notice: (1) retaliation by defendant Dahlke in denying plaintiff a religious calendar; (2) retaliation by defendants Meyer, Pollard, and Hamblin in denying to cash plaintiff's savings bond; (3) retaliation by defendants Hamblin and Pollard in denying plaintiff access to religious newspapers; (4) retaliation by defendants Graff, Zank, Meli, Hamblin, and Westfield in denying plaintiff canteen, hygiene, and release from segregation; and (5) retaliation by defendants Lunde and Moungey in denying plaintiff food and toilet paper. *See Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001); Wis. Admin. Code § DOC 310.09(1)(e) (complaint filed by inmate "shall clearly identify the issue"). In addition, plaintiff failed to file an inmate complaint regarding his pat search claim against defendant Lunde. Hence, there is a second reason why the pat search claim against defendant Lunde must be dismissed for failure to exhaust. *See* 42 U.S.C. § 1997e(a); Wis. Admin. Code § DOC 310.05.

B.      Pat Search Claims

Defendants maintain that plaintiff's claims concerning improper touching during pat searches against defendants Bebo and Moungey are meritless. However, plaintiff contends there is a genuine issue of material fact precluding summary judgment on these claims. He asserts that the parties' declarations are squarely contradictory as to how and why

16

defendants rubbed and hit his penis and testicles. Additionally, plaintiff notes that defendant Graff submitted an affidavit stating that guards do have contact with the genital area during pat searches.

The Eighth Amendment prohibition on cruel and unusual punishment bars prison authorities from unnecessarily and wantonly inflicting pain on inmates. *See Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004). In the context of searches of prisoners, only searches that are maliciously motivated, unrelated to institutional security, and lack a legitimate penological justification violate the Eighth Amendment. *Id.* The infliction of pain on prisoners without any legitimate penological justification "always violates contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Therefore, "infliction of pain that is totally without penological justification is per se malicious." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (internal quotation marks omitted). Prison officials are certainly permitted to touch, pat down and search a prisoner to determine whether the prisoner is hiding anything dangerous on his person. *Id.* However, a search of a prisoner may violate the Eighth Amendment if it is "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003).

Here, plaintiff avers that defendants Bebo and Moungey hit and rubbed his penis and testicles during the pat searches. Defendants deny this and assert that any contact with plaintiff's genitals was routine and unavoidable in the course of a bladed-hand pat search. In addition to their sworn statements, defendants submitted videos of the May 11, 2012, pat

17

search with defendant Bebo as well as the May 30, 2012, and June 8, 2012, incidents with defendant Moungey. Although there is no video of the May 23, 2012, incident, plaintiff's allegations related to that search are indistinguishable from the others.

The videos contradict plaintiff's assertions that defendants Bebo and Moungey hit and rubbed him sexually during the pat searches. Rather, the videos show pat searches which conform with the pat search procedure set forth above. The searches are over the clothing and brief in duration. When searching between plaintiff's legs, it appears that the bladed-hand technique is used in a downward movement. In addition, the videos do not show any hitting or rubbing of the genital area and also do not reflect any negative reaction from plaintiff to the searches.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In this case, no reasonable juror could believe plaintiff's version of events. *See id.* (holding that summary judgment should have been granted because motorist's version of facts was "utterly discredited" by videotape of incident); *see also Johnson v. Moeller*, 269 Fed. Appx. 593, 596 (7th Cir. 2008). In addition to the unrefuted video evidence, there is no dispute that the pat searches were conducted for institutional security purposes. Plaintiff has not offered any evidence to suggest that the pat searches lacked a penological justification. *See Whitman*, 386 F.3d at 934. Accordingly, plaintiff's pat search claims against defendants Bebo and Moungey will be dismissed.

18

C.  Remaining Retaliation Claims

Defendants contend that there is no evidence to support plaintiff's remaining retaliation claims. To establish a *prima facie* case of retaliation, an inmate must produce evidence that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech, and (3) his protected speech was a motivating factor in defendants' actions. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012) (clarifying allocation of evidentiary burdens at summary judgment in light of *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)); *Greene v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011) (same). If the inmate satisfies these elements, the burden shifts to the defendants to rebut the causal inference with evidence showing that they would have taken the same action even without any retaliatory motive. *See Kidwell*, 679 F.3d at 965; *Greene*, 660 F.3d at 979.

Grieving about prison conditions is protected First Amendment activity, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012), and it is undisputed that plaintiff was issued conduct reports for lying about staff shortly after he filed grievances regarding the pat searches. Defendants are not liable, however, if they would have issued the conduct reports no matter what. *See Kidwell*, 679 F.3d at 967; *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009).

The record reflects that after three of plaintiff's four complaints, investigations were conducted. The investigations revealed that plaintiff's allegations were not credible and he was charged with lying about staff. Conduct reports were issued, interviews were done, and videotapes were viewed. Following disciplinary hearings, plaintiff was found guilty of the conduct reports. In consideration of the investigations preceding the conduct reports, the

19

evidence on the videotapes, and the subsequent disciplinary hearings, defendants have satisfied their burden of showing that plaintiff would have been issued the conduct reports and would have been subjected to discipline regardless of a retaliatory motive. *See Kidwell*, 679 F.3d at 967. Consequently, plaintiff's claims that defendants issued him retaliatory conduct reports fail.

Finally, plaintiff failed to address his retaliation claims related to being forced to sleep on a dilapidated mattress and denied telephone calls. Thus, they will be dismissed. Therefore,

IT IS ORDERED that plaintiff's motion for partial summary judgment (Doc. 30) is DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Doc. 70) is GRANTED.

Dated at Milwaukee, Wisconsin, this 22nd day of August, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. District Judge

20